**IT IS ORDERED as set forth below:**

**Date: July 1, 2026**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 11-59151-JWC |
| TONY R. TYLER, | CHAPTER 7 |
| Debtor. | |
| | |
| TYREE PATTERSON, | |
| Plaintiff, | |
| v. | ADV. PRO. NO. 25-05074-JWC |
| TONY R. TYLER, | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

1

This case involves a long history between two former friends: Tyree Patterson, now known as Tyree Daniels ("Mr. Daniels"), and Tony Reed Tyler ("Mr. Tyler"). Two matters are before the Court: (1) the Complaint (the "Complaint") (Doc. No. 1) filed by Mr. Daniels, initiating this adversary proceeding against Mr. Tyler, and (2) Mr. Tyler's Motion to Avoid Placement of Lien (Doc. No. 24) (the "Motion").

Mr. Daniels's Complaint asserts two judgments he obtained against Mr. Tyler in 2008 and 2009 were not discharged in Mr. Tyler's 2011 chapter 7 bankruptcy, and he raises two theories in support of his position. First, he contends the debts were not discharged under 11 U.S.C. § 523(a)(3),[1] which, in short, provides an exception to discharge if a creditor is not duly listed or scheduled and does not obtain actual notice of a bankruptcy case in time to file either a proof of claim or a nondischargeability action under § 523(a)(2), (4), or (6). Second, Mr. Daniels asserts what he calls a "§ 343 exception" to discharge claim contending he was robbed of the opportunity to question Mr. Tyler at a § 341 creditors meeting and otherwise participate in the chapter 7 case. Although the Court is not aware of a "343" exception to discharge, the Eleventh Circuit has ruled that a debt may be excepted from discharge if the failure to schedule the creditor was the result of "fraud or intentional design." *See Samuel v. Baitcher (In re Baitcher),* 781 F.2d 1529 (11th Cir. 1986). Both § 523(a)(3) and *Baitcher* require the Court to determine whether Mr. Tyler failed to properly list or schedule Mr. Daniels as a creditor in the bankruptcy case. Here, neither party disputes that Mr. Tyler included Mr. Daniels as a creditor in the 2011 case, but Mr. Daniels asserts

---

[1] All statutory references are to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) unless otherwise specified.

2

that the address was intentionally incorrect, and he never received notice of the bankruptcy case until many years after the discharge. Mr. Tyler, in contrast, asserts he used the correct address for Mr. Daniels, the judgments were discharged, and Mr. Daniels has since violated his discharge by filing a lien against his mother's residence and other actions.

The Court heard a full day of testimony on April 8, 2026, with respect to the Complaint and the Motion. After considering the pleadings, the testimony offered, the evidence admitted, the record in this adversary proceeding and the underlying bankruptcy case,[2] and the arguments of the parties presented at the trial, the Court will deny the relief requested in the Complaint and grant in part and deny in part the relief requested in the Motion for the reasons that follow.[3]

## I.    JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II.    MATERIAL FACTS

### A.  Underlying Bankruptcy Case

Mr. Tyler filed the underlying bankruptcy case on March 28, 2011, as a chapter 13 proceeding. The list of creditors attached to the petition included "Tyree Patterson"

---

[2] The Court takes judicial notice of the docket, orders, and pleadings filed in Mr. Tyler's underlying bankruptcy case and this adversary proceeding. Fed. R. Evid. 201; *Bobadilla v. Aurora Loan Servs.,* 478 F. App'x 625, 627 (11th Cir. 2012) (unpublished) ("A court may take judicial notice of its own records and the records of inferior courts.") (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987)).

[3] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding through Fed. R. Bankr. P. 7052.

3

with the following mailing address: 7868 Cofax Chicago, Illinois, 60649 ("7868 Cofax")
(BK Doc. No. 1; Doc. No. 35, p. 76).[4] Shortly after filing the petition, Mr. Tyler filed
Schedules D and E/F (BK Doc. No. 12), and Mr. Daniels was not scheduled as a
creditor in these documents. The Court dismissed Mr. Tyler's chapter 13 case for
failure to make plan payments (BK Doc. No. 46), but the case was subsequently
reinstated. Soon after, Mr. Tyler filed a request to convert the case from chapter 13
to chapter 7 (BK Doc. No. 53). The case was converted to chapter 7, and the chapter
7 trustee later filed a report indicating that after diligent inquiry no property was
available for distribution from the estate above that exempted by law and requesting
to be discharged of his duties as trustee. Because it was a no-asset chapter 7 case, no
deadline for creditors to file proofs of claim was ever established. Thereafter, on
February 22, 2012, Mr. Tyler received a discharge, and the case was closed (BK Doc.
No. 71).

Throughout the entirety of the bankruptcy case, the clerk's office served notices
and filings to Mr. Daniels at 7868 Cofax, and Mr. Tyler never amended his list of
creditors. The present issues arose thirteen years after Mr. Tyler's discharge when
Mr. Daniels moved to reopen the bankruptcy case, asserting he was not properly
scheduled in the case, had no knowledge of the case until 2024, and holds two
prepetition judgments against Mr. Tyler that are nondischargeable under § 523(a)(3)
(BK Doc. No. 84). The Court reopened the bankruptcy case (BK Doc. No. 88), and Mr.

---

[4] References to the docket in this adversary proceeding are cited to as "Doc. No." or their respective
given title, and references to the docket in the underlying bankruptcy case are cited to as "BK Doc.
No."

4

Daniels filed the Complaint initiating this adversary proceeding (Doc. No. 1). Mr. Tyler filed an answer to the Complaint denying liability (Doc. No. 5) and filed his Motion (Doc. No. 24) asserting that Mr. Daniels sought to enforce his judgments in violation of his 2012 discharge. Mr. Tyler asserts that Mr. Daniels filed a lien against his mother's residence at 16838 Wausau Avenue, South Holland, Illinois ("16838 Wausau") and took other collection actions. He asks the Court to order Mr. Daniels to remove the lien and hold Mr. Daniels in contempt and impose sanctions.

### B. The Trial

At trial, both parties testified and answered questions by each other and the Court.

Mr. Daniels's evidence consisted mostly of testimony and exhibits regarding the two judgments he received against Mr. Tyler in 2008 and 2009. Mr. Daniels testified that the first judgment for $528 was for harassment regarding ten messages Mr. Tyler sent him. On October 16, 2008, Mr. Daniels filed a lawsuit against Mr. Tyler in the City of Richmond General District Court, Civil Division. Mr. Daniels introduced into evidence a document titled "Warrant in Debt (Civil Claim for Money)" which appears to be a court summons. [Doc. No. 41, Ex. 38-1.] The document contains what appears to be a few factual allegations handwritten by Mr. Daniels, but they are mostly illegible. [*Id.*] The document also appears to include the handwritten judgment of the state court for $528 entered on December 16, 2008. [*Id.*] The judgment includes no factual findings of any kind and was entered after Mr. Tyler failed to appear. [*Id.*] The document contains several handwritten words circled on it,

including "harassment" and "tortious injury damages." [*Id.*] Mr. Daniels testified that the messages he received from Mr. Tyler included death threats, but he provided no written evidence to support this. Mr. Daniels alerted authorities about the messages on October 27, 2008, and he alleges the police issued an arrest warrant. However, he testified that he was unable to receive a copy of the arrest warrant, and he provided no other evidence about an arrest warrant. He did, however, introduce an incident report by the Richmond Virginia Police Department. [Doc. No. 41, Ex. 38-2.] After reporting the messages, the Richmond Police Department prepared a report noting, "[t]he victim is receiving annoying phone calls from a known person." [*Id.*] The police report makes no reference to death threats. Mr. Daniels later registered the judgment in the Circuit Court of Cook County, Illinois. [*See* case no. 2009-MI-501004.]

As to the second judgment for $1,500, Mr. Daniels testified that Mr. Tyler filed a lawsuit against him in the Circuit Court of Cook County, Illinois in 2008. [*See* case no. 2008-MI-191956.] Mr. Daniels testified he has been a practicing attorney for 23 years and previously represented Mr. Tyler. Mr. Daniels filed a counterclaim in the action for past attorney's fees owed by Mr. Tyler. When Mr. Tyler initially filed the case, he served Mr. Daniels at a mailing address of 7944 S. Escanaba Avenue, Chicago, Illinois ("7944 Escanaba"). Although Mr. Daniels testified 7944 Escanaba was a family property and he did not live there, he did not contest service. At that time, Mr. Daniels lived at 609 Westover Hills Boulevard, Richmond, Virginia ("609 Westover"). On May 13, 2009, the state court entered a judgment on Mr. Daniels's counterclaim, awarding him $1,500. [Doc. No. 41, Ex. 38-3; Doc. No. 35, p. 22.]

After entry of these judgments, the parties' friendship was on and off at various times. At the time Mr. Tyler filed bankruptcy in 2011, Mr. Daniels testified the pair had not been friends, while Mr. Tyler testified they were friends. Because they were often not in communication with each other, Mr. Daniels testified that he forgot about the judgments until 2024.[5] Before he was aware of the bankruptcy, Mr. Daniels revived both judgments. On January 31, 2024, the Circuit Court of Cook County entered orders for revival of the judgments regarding his $1,500 judgment with accrued interest of $3,715.49 and his $528 judgment with accrued interest of $1,372.17. [Doc. No. 35, p. 22, 27, 143; *see* case nos. 2009-MI-501004 and 2008-MI-191956.] Subsequently, on March 26, 2024, and June 5, 2024, Mr. Daniels filed notices and affidavits in Georgia to register the revived judgments in the Superior Courts of Fulton County and Douglas County. [Doc. No. 35, p. 5, 19, 20, 23; *see* case nos. 24CV003762 & 24CV00953.] The Superior Court of Fulton County registered the judgment from the Circuit Court of Cook County in the amount of $1,500 on August 12, 2024. [*See* case no. 24CV003762.] In response to the Douglas County action, on November 7, 2024, Mr. Tyler filed a Motion to Deny and Dismiss Plaintiff's Proposed Order to Domesticate Foreign Judgment and attached the discharge order from his 2011 bankruptcy. [Doc. No. 35, p. 100–102; Doc. No. 32, Ex. 10, case no. 24CV00953.] Mr. Daniels testified that this was the first time he learned about Mr. Tyler's

---

[5] Mr. Daniels also filed three bankruptcy petitions in this Court and failed to schedule the two judgments as assets of his estate (*See* case nos. 14-65877-PWB, 18-64668-PWB, 18-70205-PWB). When the Court was made aware of the omission by his former chapter 7 trustee, the Court *sua sponte* issued a show cause order as to why this adversary proceeding should not be dismissed on grounds of judicial estoppel (Doc. No. 11). At a hearing held on August 26, 2025, the Court concluded that judicial estoppel did not apply to bar prosecution of the current adversary proceeding (Doc. No. 21).

bankruptcy. On March 5, 2025, the Superior Court of Douglas County denied Mr. Tyler's motion and registered both judgments. [Doc. No. 32, Ex. 12.] Mr. Tyler filed a motion to reconsider the court's order, which the Superior Court of Douglas County denied. [Doc. No. 32, Exs. 13, 14.]

On June 18, 2025, Mr. Daniels filed affidavits for Writs of Fieri Facias in the Superior Court of Douglas County. [*See* case no. 24CV00953.] On November 28, 2025, Mr. Daniels filed a lien in Illinois against the 16838 Wausau property. [Doc. No. 35, p. 24–5.] The judgment lien states it is in satisfaction of both judgments, which now total $8,399.89 with accrued interest. [*Id.*] 16838 Wausau was first owned by Mr. Tyler's mother, Mary Ann Reed. On January 27, 2023, Ms. Reed transferred half her interest to Mr. Tyler as joint tenant. [Doc. No. 32, Ex. 16.] A second deed dated September 15, 2025, reflects Mr. Tyler transferring his interest in the property back to Ms. Reed. [Doc. No. 35, p. 56.] During the trial, Mr. Tyler testified that he has never owned the property at 16838 Wausau, he is only listed as the beneficiary for his mother. He further testified that the actions which he alleges violate his discharge order have caused him emotional distress.

With respect to the address for Mr. Daniels that Mr. Tyler used in his bankruptcy schedules, Mr. Daniels testified that he lived on Cofax around 2003 to 2004 for only a few months, but he lived at 7838 Cofax, not 7868 Cofax. He further testified that he did not know Mr. Tyler when he lived on Cofax. Both parties agreed that Mr. Daniels lived on Cofax, at some point in time, with another individual, Joseph McClure. Mr. Tyler testified that he knew Mr. Daniels lived at 7868 Cofax at

the time he filed bankruptcy in 2011 because he visited the address on at least three occasions, and he received the address from Mr. McClure. From these facts the Court addresses the parties' respective claims for relief.

### III.   CONCLUSIONS OF LAW

### A. Discharged Debts

#### i.   Incorrect Address

The Complaint asserts that Mr. Daniels holds two state-court judgments against Mr. Tyler that are nondischargeable under § 523(a)(3). Section 523(a)(3) provides that a discharge does not discharge a debt

> neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

11 U.S.C. § 523(a)(3). Whether a debt is nondischargeable under § 523(a)(3) is a multistep analysis. First, the Court must determine whether a debt was duly listed or scheduled under § 521(a)(1). If the debt in question was duly listed or scheduled, then the debt is not excepted from discharge under § 523(a)(3). If, on the other hand, the debt was not duly listed or scheduled, the Court must determine whether the creditor otherwise received notice of the bankruptcy in time to file a proof of claim or

9

a complaint to determine the dischargeability of the debt and whether the exceptions to discharge under § 523(a)(2), (4), or (6) apply.

The debtor bears the initial duty to properly schedule his creditors. *See Oxford Video, Inc. v. Walker (In re Walker)*, 125 B.R. 177, 180 (Bankr. E.D. Mich. 1990). Section 521(a)(1)(A) and Fed. R. Bankr. P. 1007(a)(1) require debtors to file a list of creditors with their names and addresses. A creditor is not "duly scheduled" if a debtor lists the incorrect name or address of a creditor, and the creditor does not receive notice. *See Manzanares v. State Farm Fire & Casualty Co. (In re Manzanares)*, 345 B.R. 773, 785 (Bankr. S.D. Fla. 2006). To determine if a creditor has been duly listed or scheduled, courts consider whether the address and name of the creditor provided by the debtor is "sufficiently accurate to permit delivery by the United States Postal Service to the appropriate party." *In re Walker*, 125 B.R. at 180. If the name and address of the creditor are correct, or otherwise undisputed, mailings are presumed to have been delivered to the party addressed. *See North Am. Specialty Ins. Co. v. Foxson (In re Foxson)*, 660 B.R. 633, 646 (Bankr. D. Md. 2023). When, however, a creditor challenges the address, the burden rests on the creditor to "establish that the address provided by the debtor was so incorrect as to fall short of this threshold." *In re Walker*, 125 B.R. at 180; *see also In re TEMSCO NC Inc.*, 537 B.R. 108, 120 (Bankr. D.P.R. 2015). Creditors who meet their burden of showing they were incorrectly listed or scheduled often are treated the same as creditors who were not listed at all. *See In re Manzanares*, 345 B.R. at 785.

10

Mr. Daniels alleges that Mr. Tyler, although listing Mr. Daniels as a creditor, intentionally provided an incorrect address for Mr. Daniels so that he would not receive notice of the bankruptcy or the Court's notices in time to file a dischargeability complaint. Mr. Tyler asserts he provided notice by listing Mr. Daniels as a creditor with an address of 7868 Cofax. During the trial, Mr. Daniels testified he never lived at 7868 Cofax and is not aware of what is at that address. He also testified about two other addresses which Mr. Tyler was aware of and could have used. First, Mr. Daniels testified that in previous years he lived at 609 Westover in Virginia. His testimony, however, makes clear that he lived in Virginia from September 2008 until April 2009, around two years before Mr. Tyler filed the underlying bankruptcy case in 2011. The state court documents listing 609 Westover as Mr. Daniels's address are all from 2008 and 2009. [Doc. No. 32, Ex. 38-1, 38-2, 38-3.] Second, Mr. Daniels testified that Mr. Tyler was aware of Mr. Daniels's address at 7944 Escanaba in Illinois. When Mr. Tyler sued Mr. Daniels in 2008 in the Circuit Court of Cook County, he served Mr. Daniels at 7944 Escanaba, and Mr. Daniels did not contest service. Several state court documents list this address for Mr. Daniels, both before and after Mr. Tyler's petition date. [Doc. No. 32, Ex. 38-4, 38-5.] Although he testified that this address was family property and he never lived there, this address was known to Mr. Tyler through the various state court documents, and he was aware Mr. Daniels previously accepted service at this address.

Lastly, Mr. Daniels testified that he once lived on Cofax at a different address number. During cross-examination, Mr. Daniels stated he lived at 7838 Cofax around

2003 to 2004 for a temporary period of two to three months, before he met Mr. Tyler. Despite this, Mr. Tyler testified he knew Mr. Daniels when he lived on Cofax, and he knew the address because he visited Mr. Daniels there at least three times. Even if Mr. Daniels lived on Cofax in 2011, he testified he lived at 7838 Cofax and not 7868 Cofax as listed by Mr. Tyler. Mr. Tyler presented no written evidence demonstrating that Mr. Daniels lived at 7868 Cofax at any point in time.

Based on this evidence, the Court finds that Mr. Daniels met his burden of establishing that the address listed for him in the creditor matrix was inaccurate and did not give him notice of the bankruptcy case. No evidence before the Court establishes that 7868 Cofax was a proper address for Mr. Daniels at the time of Mr. Tyler's bankruptcy case. Having determined that Mr. Daniels met his burden of establishing that the address listed for him in the creditor matrix was inaccurate, the Court now considers the dischargeability of the underlying debts under § 523(a)(3) and *Baitcher*.

### ii. <u>Dischargeability Under § 523(a)(3)</u>

Mr. Daniels's first claim for nondischargeability rests on § 523(a)(3). The Court must determine that the failure to list or schedule Mr. Daniels's debts prevented him from taking the actions specified in either § 523(a)(3)(A) or (B). Specifically, the Court must decide whether Mr. Daniels had actual knowledge of the bankruptcy case in time to file either a proof of claim or a nondischargeability action, or if the debts are of the kind specified in § 523(a)(2), (4), or (6).

The Court first addresses whether Mr. Daniels had actual knowledge in time to file an action. Courts within the Eleventh Circuit have long held that a creditor's actual knowledge of a case is "sufficient to satisfy constitutional due process requirements." *Ford Bus. Forms, Inc. v. Sure Card, Inc.*, 180 B.R. 294, 295 (S.D. Fla. 1994). This prevents a creditor who knew about the bankruptcy case but did not receive proper notice, "from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed [to] him is [non]dischargeable." *Washington v. Abreu (In re Abreu)*, No. 19-5301, 2021 WL 346112, at *4 (Bankr. N.D. Ga. Feb. 1, 2021) (quoting *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 460 (11th Cir. 1988)). The creditor must have knowledge in time to timely file a complaint regarding dischargeability. *See id.* Pursuant to Fed. R. Bankr. P. 4007(c), a creditor has 60 days from the first date set for the meeting of creditors to file a complaint to determine dischargeability under § 523(c). Courts generally find 30 days' notice before the deadline to file a dischargeability complaint sufficient. *See id.* The debtor bears the burden of proving a creditor had actual knowledge of the bankruptcy case. *See id.* at *3.

The Court concludes that Mr. Tyler failed to carry his burden of establishing Mr. Daniels had actual knowledge of the bankruptcy case in time to either file a proof of claim (if such a deadline existed) or to file a nondischargeability action. The only evidence presented to the Court regarding actual knowledge is Mr. Daniels's testimony that he was not aware of the bankruptcy case until November 2024, when Mr. Tyler responded to Mr. Daniels's notices to register the judgments in Georgia.

After receiving notice, Mr. Daniels moved to reopen the bankruptcy case to file this adversary proceeding. The Court concludes that Mr. Tyler failed to establish that Mr. Daniels had actual knowledge of the bankruptcy case in time to file a proof of claim or a nondischargeability action.

Whether § 523(a)(3)(A) or (B) applies depends upon whether the debts at issue are "of a kind specified in paragraph (2), (4), or (6)" of § 523(a) ("246 claims"). If Mr. Daniels's debts are not 246 claims, then § 523(a)(3)(A) applies, and the question is whether the failure to schedule Mr. Daniels's debts prevented "timely filing a proof of claim." Because Mr. Tyler's bankruptcy case was a no-asset case, however, no deadline to file a proof of claim ever existed, and any failure to list or schedule Mr. Daniels's claims could not have prevented him from "timely filing a proof of claim." *See In re McIntosh*, 657 B.R. 279, 294 (Bankr. S.D. Fla. 2024) ("In a no-asset chapter 7 case, no deadline is set for the filing of claims. Therefore, the lack of notice to the creditor does not deprive the creditor of the opportunity to file a timely proof of claim.") (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.09 (16th ed. 2023)). Thus, the judgments cannot be excepted from discharge under § 523(a)(3)(A) or (B) based on Mr. Daniels's inability to timely file a proof of claim, as no such deadline ever existed. That leaves only § 523(a)(3)(B)'s inquiry of whether the judgment debts are of the kind specified in § 523(a)(2), (4), or (6).

In short, 246 claims are debts arising from fraud (§ 523(a)(2)), defalcation while acting in a fiduciary capacity, larceny, or embezzlement (§ 523(a)(4)), or willful and malicious injury (§ 523(a)(6)). Mr. Daniels does not allege that either of the judgments

14

arise from fraud, defalcation while acting in a fiduciary capacity, larceny, or embezzlement, so the exceptions to discharge under § 523(a)(2) and (4) are unavailable. That leaves § 523(a)(6), which provides that a debt is nondischargeable if it arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "A debtor is responsible for a 'willful' injury when [he] commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Kane v. Stewart Tilghman Fox & Bianchi P.A. (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014) (quoting *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012)). The debtor must intend the injury and the act leading to the injury. *See Watson v. Bradsher (In re Watson)*, 147 F.4th 1330, 1337 (11th Cir. 2025). A finding of liability for an intentional tort alone is not enough for a creditor to establish nondischargeability. A finding of an intent to cause injury must be shown. *See id.* As for malice, the Eleventh Circuit has interpreted this as an injury which is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* at 1339 (quoting *In re Jennings*, 670 F.3d at 1334). "Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice." *Id. (*quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989), *abrogated on other grounds by*, *Grogan v. Garner*, 498 U.S. 279 (1991)). To support the Bankruptcy Code's purpose of a "fresh start," the exceptions to discharge are narrowly construed in favor of the debtor. *See In re Abreu*, 2021 WL 346112, at *3.

15

The creditor must prove nondischargeability by a preponderance of the evidence. *See id.*; Fed. R. Bankr. P. 4005.

Analyzing the underlying judgments does not support a conclusion that they were based on willful and malicious injuries. Mr. Daniels alleges that the judgment for $528 was granted for "the intentional tort of harassment (which was willful and malicious under the circumstances)." [Compl. ¶ 22.] While Mr. Daniels testified that he received ten messages from Mr. Tyler which he categorizes as harassment and willful conduct, his evidence is insufficient for the Court to find that judgment resulted from a willful and malicious injury. First, Mr. Daniels put forward no evidence of Mr. Tyler intentionally causing injury. Even if Mr. Tyler's ten messages to Mr. Daniels were intentional, Mr. Daniels failed to show they were delivered with the purpose of causing harm or knowingly done with substantial certainty of harm. Mr. Daniels's evidence to establish willful and malicious conduct consists of the document titled "Warrant in Debt (Civil Claim for Money)" (Doc. No. 41, Ex. 38-1) and the Richmond Police Department incident report (*Id.*, Ex. 38-2). The Warrant in Debt document includes the handwritten judgment of the City of Richmond General District Court, Civil Division, for $528, but the judgment includes no factual findings of any kind. The only information this document provides the Court is mostly illegible handwritten notes by Mr. Daniels including the circled words "harassment" and "tortious injury damages." [*Id.*, Ex. 38-1.] As for the incident report, it merely states that "[t]he victim is receiving annoying phone calls from a known person." [*Id.*, Ex. 38-2.] The state court's finding of tortious injury damages, the incident report with

16

"annoying phone calls," and Mr. Daniels categorizing the actions as harassment are not enough to establish that the phone calls were made with the intent of causing injury.

Second, Mr. Daniels failed to put forward evidence of malice, either showing Mr. Tyler's actions were excessive or without just cause. The only evidence the Court has before it is his testimony that he received ten messages, one of which allegedly contained a death threat. Allegations of death threats were not supported by any physical evidence and were contradicted by the police report which references only "annoying phone calls." [*Id.*, Ex. 38-2.] Finding the messages "annoying" is not enough, and Mr. Daniels failed to provide any other additional evidence to support his contention that the judgment for harassment resulted from a willful and malicious injury under § 523(a)(6). Considering the lack of evidence and narrow construction of discharge exceptions in favor of debtors, the Court finds that the judgment for $528 is not excepted from discharge under § 523(a)(6).

As for the $1,500 judgment, Mr. Daniels does not contend that it is a 246 claim at all. The only evidence relative to the basis of the $1,500 judgment is testimony of Mr. Daniels that it was for unpaid legal work Mr. Daniels performed on behalf of Mr. Tyler. Mr. Daniels's only argument is that Mr. Tyler's intentional failure to provide his correct address in the bankruptcy case "robbed" him of the opportunity to participate in the bankruptcy case, including objecting to Mr. Tyler's discharge for failing to disclose certain assets. The Court, however, addresses this argument below

as it relates to *Baitcher*. The Court concludes that the $1,500 judgment is not a 246 claim, and it cannot be excepted from discharge under § 523(a)(3)(B).

The Court finds that Mr. Daniels established Mr. Tyler used an incorrect address and failed to provide him with timely notice of the bankruptcy filing. Despite the incorrect address, Mr. Daniels failed to establish the underlying debts are excepted from discharge under § 523(a)(3).

### iii.  Dischargeability Under *Baitcher*

In *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir. 1986), the Eleventh Circuit implemented a judicially created supplement to § 523(a)(3), "to fill a gap left under the Code which enabled unscrupulous debtors to obtain discharge of debts of the kind which would have been [non]dischargeable in the case by fraudulently omitting such debts from their schedules . . . ." *Keenom v. All Am. Mktg. (In re Keenom)*, 231 B.R. 116, 123 (Bankr. M.D. Ga. 1999). In simple terms, if a debtor failed to schedule, or as in this case incorrectly listed, a creditor in a no-asset case by an honest, good faith mistake and not by fraud or intentional design, the debt may be discharged. *See In re McDaniel*, 217 B.R. 348, 356 (Bankr. N.D. Ga. 1998). The burden shifts to the debtor to show an absence of fraud or intentional design. *See Rion v. Spivey (In re Springer)*, 127 B.R. 702, 708 (Bankr. M.D. Fla. 1991). If Mr. Tyler cannot establish evidence presenting an honest mistake, then the Court must presume he used the wrong address intentionally. *See id.*

At trial, Mr. Tyler testified that he believed 7868 Cofax was where Mr. Daniels was living at the time he filed bankruptcy in 2011. Further, he stated that Mr.

18

Daniels lived there with another individual, Joseph McClure. Mr. Tyler testified he knew of this address because he was friends with Mr. Daniels and Mr. McClure at the time and visited them at the address several times. While Mr. Daniels avers that he did not live on Cofax in 2011, the Court has no evidence of where he lived at that time and in fact heard testimony from Mr. Daniels that he previously lived on Cofax with Mr. McClure, but at a different street number. The Court concludes that Mr. Tyler's use of an incorrect address was due to an honest mistake, and not as a result of any intentional design or fraud. The fact that Mr. Tyler was aware of another address where Mr. Daniels previously accepted service of process in another matter in Illinois is not determinative on this issue for at least two reasons: (1) Mr. Daniels testified that he did not live at that address at the time and chose not to contest service in the prior proceeding; and (2) the prior action was filed in 2008, and no evidence was presented that such was a proper address for him at the time Mr. Tyler filed his bankruptcy petition. The Court finds Mr. Tyler's explanations for the address he used credible and concludes no fraud or intentional design instigated use of an incorrect address.

*Baitcher* provides no basis to conclude the two judgments are nondischargeable despite the incorrect address, and Mr. Daniels failed to establish the underlying debts were excepted from discharge under § 523(a)(3). Accordingly, the debts were discharged. The Court next considers Mr. Tyler's assertions of discharge violations and any appropriate sanctions.

19

### B. Discharge Violations

Because the Court finds that the two judgment debts were discharged, the Court must consider whether Mr. Daniels's actions violated § 524, and whether sanctions are appropriate. Mr. Tyler requests that the Court find Mr. Daniels in contempt for violating his discharge injunction by filing a lien against his mother's property and his activities renewing the judgments. He requests that the Court: 1) order Mr. Daniels to rescind the lien, 2) hold Mr. Daniels in contempt of court, and 3) sanction Mr. Daniels for violation of the discharge injunction.

### i. Violation of Discharge Injunction

To determine whether Mr. Daniels violated the discharge injunction, the Court must first consider two threshold matters: 1) whether Mr. Daniels had notice of the discharge; and 2) whether Mr. Daniels intended the actions which violated the discharge injunction. *See Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1323 (11th Cir. 2015) ("[T]o find contempt, the bankruptcy court needed only to find that [creditor] was aware of the discharge injunction and intended the action that violated it . . . ."). There can be no dispute that Mr. Daniels became aware of the discharge by no later than November 7, 2024, when Mr. Tyler filed a Motion to Deny and Dismiss Plaintiff's Proposed Order to Domesticate Foreign Judgment in the Superior Court of Douglas County (Doc. No. 35, p. 100–102; Doc. No. 32, Ex. 10). Thus, any action taken after November 7, 2024, was done with actual knowledge of Mr. Tyler's discharge. The record contains no evidence that Mr. Daniels had knowledge of the discharge prior to November 7, 2024.

20

Section 524 provides in pertinent part,

> (a) A discharge in a case under this title
>
> . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived
>
> . . . .

In determining what constitutes a violation of the discharge injunction, the Eleventh Circuit has found that § 524 is meant to "'eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.' And Congress meant no doubt whatsoever: '[Section 524] is intended to insure that once a debt is discharged, *the debtor will not be pressured in any way to repay it.*'" *In re McLean*, 794 F.3d at 1321 (quoting H.R. REP. NO. 95-595, at 365–66 (1977)). The applicable test is whether the "objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim." *Id.* at 1322.

The Court first considers Mr. Daniels's continuation of the Superior Courts of Fulton County and Douglas County actions to register the judgments once he learned of Mr. Tyler's discharge on November 7, 2024. Section 524 does not define an "act, to collect . . . any such debt," but courts generally apply a broad injunction against an extensive range of collection activities. *See McKenzie-Gilyard v. HSBC Bank Nev., N.A. (In re McKenzie-Gilyard)*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007). Mr. Daniels's efforts to domesticate the judgments were procedural steps to enforce the judgments in a new jurisdiction. Registering the judgments after a discharge is a continuation of collection efforts because Mr. Daniels would not domesticate the

21

judgments if he had no intent to pursue them in the future. *See In re Passa*, 578 B.R. 898, 903 (Bankr. D. Utah 2017) (finding that recording a judgment is a violation of the automatic stay and discharge injunction even if the party's intent was only to preserve the judgments because "[t]hat argument still demonstrates an intent to collect a debt, just at a later date."). Mr. Daniels sought to domesticate the judgments in March and June of 2024, months before he had knowledge of the bankruptcy, so initiation of the domestication actions did not intentionally violate the discharge. However, once he learned of the discharge on November 7, 2024, he had ample time to dismiss the case before the Superior Court of Douglas County entered an order domesticating the judgments on March 5, 2025.[6] Some courts have found a creditor's inaction once learning of a discharge injunction is a willful violation. *See Robb v. Nat'l Tree Co. (In re Robb)*, 399 B.R. 171, 175–76 (Bankr. N.D.W.V. 2008); *In re Daly*, 666 B.R. 810, 822 (Bankr. S.D. Fla. 2025) ("[T]he continuation *in any way* of an action against the Debtor to collect on a discharged debt – including the refusal to dismiss pending litigation even if that litigation is stayed – violates the discharge injunction."). The Court finds that Mr. Daniels's continuation of his action to domesticate the judgments after he was made aware of the discharge order violated the discharge injunction issued to Mr. Tyler.

---

[6] Mr. Daniels commenced the action to register the $1,500 judgment in the Superior Court of Fulton County on March 26, 2024. The Superior Court of Fulton County registered the judgment on August 12, 2024. However, Mr. Daniels did not have actual knowledge of the discharge until November 7, 2024, when Mr. Tyler filed documents in the Superior Court of Douglas County domestication action referencing his 2012 discharge. Because Mr. Daniels did not have actual knowledge of Mr. Tyler's discharge when the judgment for $1,500 was domesticated by the Superior Court of Fulton County, any discussion pertaining to a discharge violation through continuation of actions to register the judgments relates only to the domestication action in the Superior Court of Douglas County.

22

The Court next considers whether filing the lien against property, which Mr. Tyler asserts only his mother owns, was a violation of the discharge injunction. The judgment lien states twice, "[f]or satisfaction of a judgment that was entered against Tony R. Tyler in the Municipal Department of the First District of the Circuit Court of Cook County, Illinois . . . ." [Doc. No. 35, p. 4–5.] The document refers to both judgment debts at issue, for a total balance of $8,399.89. [*Id.*] A facial reading of the judgment lien makes clear that it was filed to collect against Mr. Tyler for the two discharged debts. The filing of a lien on Mr. Tyler's mother's property, when his mother bears no liability on the judgments, and the judgments include no in rem interest, equates to Mr. Daniels seeking to coerce Mr. Tyler to repay a discharged debt. Such efforts against a non-liable third party constitute an indirect attempt to collect a discharged debt. *See In re Feldmeier*, 335 B.R. 807, 812 (Bankr. D. Or. 2005) (finding creditor violated discharge injunction by leaving collection message on debtor's mother's answering machine). Accordingly, the Court finds that the lien was a continuation of an action to collect a discharged debt in violation of § 524.

Further, because the Court finds that the underlying judgment debts were discharged, any act to collect against them is void. "[A]n act in violation of the discharge injunction is void." *Wagabaza v. Beveridge (In re Wagabaza)*, 582 B.R. 486, 498 (Bankr. C.D. Cal. 2018); *see also Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 171 (B.A.P. 9th Cir. 2005) ("Once the discharge was entered . . . any judgment that [creditor] at any time obtained on the discharged debt would automatically be rendered 'void' by § 524(a)(1) . . . ."); *In re Eichor*, 689 F. Supp. 3d

23

438, 446 (S.D. Tex. 2023) (finding any judgment rendered on a discharged debt in any forum other than bankruptcy court is null and void). Thus, the registered judgments in Georgia and the lien attached to 16838 Wausau are void, and any further act to collect on the judgments will be in direct violation of this Court's discharge order.

### ii.  Fair Ground of Doubt

Not every violation of a debtor's discharge injunction entitles a debtor to contempt sanctions.  The Supreme Court in *Taggart v. Lorenzon*, 587 U.S. 554 (2019) held that a court may impose sanctions for a discharge order violation only if there is "no fair ground of doubt" as to whether the order barred the creditor's conduct. In other words, there must be no reasonably objective basis for concluding that the creditor's conduct might be lawful. "[A] good-faith belief that an action taken does not violate the discharge injunction will not shield a party if the belief is not objectively reasonable." *In re Cowan*, No. 18-54666, 2020 WL 7330049, at *6 (Bankr. N.D. Ga. Dec. 11, 2020). The burden to establish a fair ground of doubt as to whether the actions violated the discharge injunction rests upon Mr. Daniels. *See In re McIntosh*, 657 B.R. at 292.

The first discharge violation is the continuation of the action to register the judgments in the Superior Court of Douglas County. Mr. Daniels's evidence consists of an order entered in the Superior Court of Douglas County that addressed Mr. Tyler's bankruptcy discharge (Doc. No. 32, Ex. 12). In response to Mr. Tyler's motion to deny Mr. Daniels's proposed order to domesticate the judgments which referenced his discharge, the Superior Court of Douglas County denied Mr. Tyler's motion,

24

finding that "the judgments against [Mr. Tyler] appear to have been revived by the Illinois court in 2024 after he was given notice and opportunity to respond to same, at which time this argument should have been raised." [*Id.*] Subsequently, the Superior Court of Douglas County entered an order domesticating the judgments on March 5, 2025, after Mr. Daniels had knowledge of the bankruptcy discharge. Mr. Daniels testified that the state court's order, which he relied on, led him to believe that pursuing the case was not a violation of Mr. Tyler's discharge.

Considering, first, Mr. Tyler used the wrong address for Mr. Daniels, second, Mr. Daniels had no knowledge of the discharge at the time he sought to register the judgments on June 5, 2024, and third, the Superior Court of Douglas County continued the action despite the discharge, the Court concludes Mr. Daniels had an objectively reasonable basis to believe his actions were permitted. Mr. Daniels believed the two judgments were nondischargeable under § 523(a)(3), and at the time the judgments were registered, this adversary proceeding was not yet filed. No bankruptcy court had rendered a dischargeability decision. Considering his arguments as to nondischargeability discussed above, and notwithstanding the Court's conclusion today that such arguments are not winners, Mr. Daniels had an objectively reasonable basis to believe his claims were nondischargeable. *See In re Grant-Carmack*, No. 6:20-bk-02408, 2022 WL 1115001, at *4 (Bankr. M.D. Fla. Mar. 31, 2022) (finding a fair ground of doubt because no determination of dischargeability had been made and it was arguable that domestic support obligation was nondischargeable). Although the Court now finds the debts were discharged, at the

25

time Mr. Daniels became aware of the discharge, a reasonable person could have believed otherwise. Accordingly, the Court finds that a "fair ground of doubt" existed as to whether the discharge order barred Mr. Daniels's conduct in failing to dismiss the action in the Superior Court of Douglas County.[7]

Whether Mr. Daniels had a fair ground of doubt when filing the judgment lien against the 16838 Wausau property presents a more difficult question. Mr. Daniels filed the lien November 28, 2025, seven months after he initiated this adversary proceeding and nearly a year after learning about Mr. Tyler's discharge. He initiated this adversary proceeding requesting that the Court find the two judgment debts nondischargeable and proceeded to take action to collect on the judgments at the same time. On one hand, filing this adversary proceeding arguably did not, in and of itself, remove the fair ground of doubt, and Mr. Daniels could still have an objectively reasonable belief that the judgment debts were nondischargeable for the same reasons explained above. However, creditors should not be enforcing their debts that are the subject of pending dischargeability actions, and they do so at their own peril. "Requiring the party subject to the injunction to bring a legal challenge before

---

[7] While the Court finds a fair ground of doubt exists, in part because of the state court order, the Court does not interpret the state court's order as a dischargeability determination, nor does Mr. Daniels argue it is. The order states that the Circuit Court of Cook County revived the judgments in 2024 and Mr. Tyler should have raised his discharge then. No language indicates that the state court believed the judgment debts were discharged pursuant to Mr. Tyler's discharge order. However, a discharge is a nonwaivable defense, and Mr. Tyler's failure to raise his discharge in the prior state court action to revive the judgments does not prevent him from asserting it in a later proceeding. *See Meadows v. Hagler (In re Meadows)*, 428 B.R. 894, 907 (Bankr. N.D. Ga. 2010) ("Both §§ 524(a)(1) and (a)(2) expressly state, however, that their protections with regard to a discharged debt apply 'whether or not discharge of such debt is waived.'"); *In re Daly*, 666 B.R. at 824–25; *In re Eichor*, 689 F. Supp. 3d at 446 ("[I]t is 'unequivocally unnecessary' for the bankruptcy debtor to raise the discharge injunction as an affirmative defense or even to respond in the state-court action.").

intentionally violating the final order ensures notice to other interested parties, adversarial testing and a fair opportunity for unbiased judicial resolution." *Thomas v. City of Philadelphia (In re Thomas),* No. 24-1861, 2026 WL 1658785, at *6 (3rd Cir. June 9, 2026). Instead of waiting for this Court's ruling, Mr. Daniels employed a self-help approach by filing a lien while the adversary proceeding was pending. *See id.* at *1 ("[T]he [creditor] violated well-established law by resorting to a self-help violation of the discharge order years after it became final."). To allow Mr. Daniels to pursue collection activity at the same time he sought a dischargeability determination from this Court would "throw those types of debts into 'debt limbo,' with neither the automatic stay nor the discharge injunction functioning to protect debtors . . . [and] creditors could perceive it as granting them the 'green light' to commence or continue litigation against debtors" before a bankruptcy court makes a dischargeability determination. *Buke, LLC v. Eastburg (In re Eastburg),* 447 B.R. 624, 632 n.38 (B.A.P. 10th Cir. 2011); *see also In re Daly,* 666 B.R. at 823.

Ultimately, the Court need not make this difficult determination because, even assuming there was no fair ground of doubt when Mr. Daniels filed the lien against 16838 Wausau, Mr. Tyler failed to prove any recoverable damages and sanctions against Mr. Daniels are not appropriate for the reasons set forth below.

### iii. Sanctions and Damages

Although § 524 does not expressly authorize monetary damages upon a discharge injunction violation, courts rely on their statutory powers pursuant to § 105 of the Bankruptcy Code to impose appropriate sanctions. *See In re Deemer,* 602 B.R.

27

770, 776 (Bankr. M.D. Ala. 2019). Under § 105, bankruptcy courts may impose compensatory sanctions for actual damages that a debtor incurs as a result of a creditor's violation of the discharge injunction, which can include emotional distress, but "not every willful violation of the [discharge injunction] merits compensation for emotional distress and that a standard governing such claims is necessary." *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). The Court may impose sanctions for such violations "to coerce the defendant into compliance with the court's order, [or] to compensate the complainant for losses sustained." *In re McLean*, 794 F.3d at 1323 (quoting *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013)). The burden rested on Mr. Tyler to prove actual damages or provide a justification warranting punitive damages. *See In re Cowan*, 2020 WL 7330049, at *7. Mr. Tyler's Motion requests the Court hold Mr. Daniels in contempt of court and impose sanctions. He further argued for emotional distress damages.

At trial, Mr. Tyler presented no evidence of out-of-pocket monetary expenses resulting from the discharge violations, and he has no attorney's fees as a pro se party. He also presented insufficient evidence to recover damages for emotional distress. For emotional distress damages "a plaintiff must (1) suffer significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the [discharge injunction]." *Lodge*, 750 F.3d at 1271. Generally, a party must also produce corroborating evidence to establish significant emotional distress. *Steed v. GSRAN-Z LLC (In re Steed)*, 2021 WL 1186482, at *8 (Bankr. N.D. Ga. Mar.

28

26, 2021). Mr. Tyler presented no testimony or corroborating evidence to warrant emotional distress damages. He testified that Mr. Daniels's action of filing the judgment lien caused him emotional distress but provided no other testimony or evidence. Accordingly, the Court will not impose compensatory sanctions for actual damages, including emotional distress damages.

The Court has no evidence of losses sustained by Mr. Tyler and does not believe monetary sanctions against Mr. Daniels are appropriate under the unique facts and circumstances of this case. Mr. Daniels was not given proper notice of the bankruptcy, he did not learn of the existence of the discharge until twelve years after its entry, and he promptly filed an action in this Court seeking a determination of dischargeability. However, the Court must make clear that Mr. Daniels violated the discharge injunction. Mr. Tyler's Motion will be granted in part, and the lien attached to 16838 Wausau and any other liens associated with the renewed judgments are declared void, and Mr. Daniels will be ordered to take all necessary steps to have any judgment liens cancelled of record and any pending litigation relating to the judgments dismissed with prejudice. Since the Court finds the debts discharged and Mr. Daniels is now on notice of this finding, any further collection efforts would be a violation of this Court's discharge order and will result in a different outcome under *Taggart* if the parties find themselves here again. The judgments in question were discharged, and further collection efforts on them are prohibited.

## IV.    UNDERLINE CONCLUSION

For the reasons set forth above,

29

IT IS ORDERED that both judgment debts were discharged by the discharge granted to Mr. Tyler in 2012, and Mr. Daniels's claims for relief under the Complaint are denied.

IT IS FURTHER ORDERED that Mr. Tyler's Motion is GRANTED in part and DENIED in part. It is GRANTED as to Mr. Tyler's request to have the lien attached to 16838 Wausau and any other liens associated with the renewed judgments declared void. Any renewals of the original judgments entered by the City of Richmond General District Court, Civil Division for $528, and the Circuit Court of Cook County, Illinois for $1,500, as well as the recording of any judgment liens related thereto, are void by virtue of the discharge injunction issued by this Court. Mr. Daniels is ordered and directed to take all necessary steps to have any liens associated with the judgments cancelled of record and any pending litigation relating to the judgments dismissed with prejudice. This Order may be recorded in the real estate records of any state, county, or municipality to effectuate the intent and purpose of this Order. The Motion is DENIED as to all other forms of relief not specified above.

The Clerk is directed to serve a copy of this Order on Mr. Tyler, Mr. Daniels, and the Chapter 7 Trustee.

END OF DOCUMENT